1   EDMUND G. BROWN JR.
    Attorney General of the State of California
2   DANE R. GILLETTE
    Chief Assistant Attorney General
3   GERALD A. ENGLER
    Senior Assistant Attorney General
4   GREGORY A. OTT
    Deputy Attorney General
5   MICHELE J. SWANSON, State Bar No. 191193
    Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-7004
7    Telephone:  (415) 703-5703
     Fax:  (415) 703-1234
8    Email:  Michele.Swanson@doj.ca.gov
    Attorneys for Respondent
9

10                  IN THE UNITED STATES DISTRICT COURT

11             FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                       SAN FRANCISCO DIVISION

13

14  **TRACY JAMAR BROWN,**                     C 06-4194 MJJ (PR)

15                              Petitioner,    **ANSWER TO ORDER TO
                                               SHOW CAUSE**
16           **v.**

17  **SCOTT KERNAN, Warden,**

18                              Respondent.

19

20          Respondent provides this answer to the order to show cause why the petition for writ

21  of habeas corpus should not be granted:

22                                      **I.**

23                                   **CUSTODY**

24          Petitioner is lawfully in the custody of Scott Kernan, Warden of California State Prison,

25  New Folsom, as a result of a judgment of conviction in Alameda County Superior Court, case

26  number 141346A. A jury found petitioner guilty of first degree murder and found true the allegation

27  that he personally used a handgun.  The trial court sentenced petitioner to 50 years to life in state

28  prison.

## II.

### GENERAL AND SPECIFIC DENIALS

Respondent denies that the state appellate court rulings were based on an unreasonable determination of fact or were contrary to or involved an unreasonable application of clearly established United States Supreme Court precedent. Respondent specifically denies that: (1) the exclusion of a witness statement violated petitioner's right to due process and to present a defense; (2) the admission of other crimes evidence and expert testimony violated petitioner's right to due process and equal protection; (3) petitioner's conviction violates due process because it is based on insufficient evidence; and (4) the admission of identification evidence violated petitioner's right to due process.

## III.

### PROCEDURAL DEFENSES

Petitioner exhausted his claims in state court. His third and fourth claims are procedurally defaulted. The petition is timely within the meaning of 28 U.S.C. § 2244.

## IV.

### LODGED DOCUMENTS

Respondent has lodged concurrently with this answer the following exhibits: (1) State Court Clerk's Transcript (8 volumes); (2) State Court Reporter's Transcript (10 volumes); (3) Opinion by the California Court of Appeal; (4) Petition for Review filed in the California Supreme Court; (5) Order of the California Supreme Court denying review; (6) Petition for Writ of Habeas Corpus filed in the California Supreme Court; and (7) Order of the California Supreme Court denying petition. Respondent hereby incorporates by reference the accompanying memorandum of points and authorities in support of this answer.

///

///

///

///

///

Answer to Order to Show Cause

Brown v. Kernan, Warden
C 06-4194 MJJ (PR)

1          WHEREFORE, respondent respectfully submits that the petition for writ of habeas corpus

2    should be denied.

3          Dated:  July 27, 2007

4                              Respectfully submitted,

5                              EDMUND G. BROWN JR.
                               Attorney General of the State of California

6                              DANE R. GILLETTE
                               Chief Assistant Attorney General

7                              GERALD A. ENGLER
                               Senior Assistant Attorney General

8

9                              GREGORY A. OTT
                               Deputy Attorney General

10

11                             /s/ Michele J. Swanson

12                             MICHELE J. SWANSON
                               Deputy Attorney General

13                             Attorneys for Respondent

14

15   20097667.wpd
     SF2006403386

16

17

18

19

20

21

22

23

24

25

26

27

28

Answer to Order to Show Cause                                    Brown v. Kernan, Warden
                                                                 C 06-4194 MJJ (PR)

                                      3

EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
GERALD A. ENGLER
Senior Assistant Attorney General
GREGORY A. OTT
Deputy Attorney General
MICHELE J. SWANSON, State Bar No. 191193
Deputy Attorney General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 703-5703
 Fax:  (415) 703-1234
 Email:  Michele.Swanson@doj.ca.gov
Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **TRACY JAMAR BROWN,** | C 06-4194 MJJ (PR) |
| Petitioner, | |
| v. | |
| **SCOTT KERNAN, Warden,** | |
| Respondent. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER**

1    EDMUND G. BROWN JR.
     Attorney General of the State of California
2    DANE R. GILLETTE
     Chief Assistant Attorney General
3    GERALD A. ENGLER
     Senior Assistant Attorney General
4    GREGORY A. OTT
     Deputy Attorney General
5    MICHELE J. SWANSON, State Bar No. 191193
     Deputy Attorney General
6     455 Golden Gate Avenue, Suite 11000
      San Francisco, CA  94102-7004
7     Telephone:  (415) 703-5703
      Fax:  (415) 703-1234
8     Email:  Michele.Swanson@doj.ca.gov
     Attorneys for Respondent
9
                IN THE UNITED STATES DISTRICT COURT
10
              FOR THE NORTHERN DISTRICT OF CALIFORNIA
11
                      SAN FRANCISCO DIVISION
12

13   **TRACY JAMAR BROWN,**                    C 06-4194 MJJ (PR)

14                            Petitioner,      **MEMORANDUM OF POINTS
                                               AND AUTHORITIES IN
15         **v.**                              SUPPORT OF ANSWER**

16   **SCOTT KERNAN, Warden,**

17                            Respondent.

18

19                     **STATEMENT OF THE CASE**

20          In 2002, a jury convicted petitioner of first degree murder and found true the allegation

21   that he personally used a handgun in Alameda County case number 141346A.  Exh. 1H at 1791.[1]

22   The trial court sentenced petitioner to 50 years to life in state prison.  Exh. 1H at 1948-1950.

23          The California Court of Appeal affirmed the judgment on February 15, 2005.  Exh. 3.

24   Petitioner filed a petition for review in the California Supreme Court, which was denied on May 11,

25   2005.  Exhs. 4, 5.

26   _____

27        1.  A codefendant, David Buchanan, was jointly charged and tried with petitioner.  Exh. 1F
     at 1325-1330.  Buchanan was acquitted of all charges.  Exh. 1H at 1792.
28

1    Petitioner filed a petition for writ of habeas corpus in the California Supreme Court on

2    August 24, 2005.  Exh. 6.  The California Supreme Court denied the petition—citing *In re Seaton*,

3    34 Cal. 4th 193 (2004), and *In re Dixon*, 41 Cal. 2d 756 (1953)—on June 14, 2006.  Exh. 7.

4    Petitioner filed the instant habeas corpus petition in this Court on July 7, 2006.

5

6                                   **STATEMENT OF FACTS**

7    The California Court of Appeal summarized the facts of petitioner's offense as follows

8    (petitioner is referred to as "defendant"):

9    　　　Defendant and Buchanan often sold rock cocaine near the corner of 28th
     Avenue and Foothill Boulevard in Oakland.  The murder victim, Marlis Cauley,
10   was also a cocaine dealer.  Although Cauley had at one time worked from East
     16th Street, sometime prior to the murder he relocated to 28th Avenue.
11   Defendant, a longtime acquaintance of Cauley, acceded to Cauley's selling on
     28th Avenue after learning that Cauley had been robbed while dealing at the
12   prior location.  According to Buchanan's testimony, however, defendant and
     Cauley had an ongoing disagreement over Cauley's manner of selling cocaine.
13   Generally, dealers at a common location take turns making sales, but Cauley
     had a habit of dominating sales by aggressively approaching potential
14   customers, a practice Buchanan referred to as "rushing the knocks [customers]."
     Buchanan testified that on the evening of the murder, March 26, 2001,
15   defendant had warned Cauley against "rushing the knocks" and threatened
     vague consequences if Cauley persisted in his aggressive selling practices.
16
     　　　On the night of the murder, Jose Vargas and Michael Perez, two cousins
17   who were frequent customers of all three dealers, walked up 28th Avenue
     toward Foothill.  As the cousins reached the corner, they saw defendant and
18   Buchanan, both of whom approached them.  Buchanan greeted Perez, Perez
     returned the greeting, and Buchanan attempted to initiate a drug transaction.
19
     　　　Almost immediately, Cauley appeared and began to approach the group.
20   When Cauley reached Perez, he put his arm around Perez's shoulders and
     attempted to steer him from Buchanan and defendant.  Seeing his potential
21   customer taken away, Buchanan grabbed Perez in an apparent attempt to take
     money from Perez's pocket.  Cauley then tried to separate Buchanan from
22   Perez, and the three struggled, with Buchanan and Cauley pulling Perez in
     different directions.
23
     　　　At some point during this commotion, defendant moved closer to the
24   group, raised a gun to Cauley's head, and shot him.  Cauley put his hands to his
     head, screamed in pain, and began jumping up and down.  As Cauley did so,
25   defendant fired the gun at least once more.
26   　　　Cauley died from two gunshots to the back of his head.  The pathologist
     who performed an autopsy on Cauley testified that after the first shot, which
27   penetrated Cauley's scalp but not his skull, Cauley would have retained
     consciousness and been able to move and speak, but the second wound would
28

1    have rendered him promptly unconscious.

2        Testifying in his own defense, defendant admitted to selling cocaine to the
     cousins on many occasions, but he denied being on 28th Avenue on the evening
3    of the murder and shooting Cauley.

4    Exh. 3 at 1-3.

5

6                                **ARGUMENT**

7                                    **I.**

8                            **STANDARD OF REVIEW**

9        This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

10   (AEDPA), which imposes a "highly deferential" standard for evaluating state court rulings and

11   "demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537

12   U.S. 19, 24 (2002) (per curiam).  Under AEDPA, the federal court has no authority to grant habeas

13   relief unless the state court's ruling was "contrary to, or involved an unreasonable application of,"

14   clearly established Supreme Court precedent.  28 U.S.C. § 2254(d)(1).  A decision constitutes an

15   unreasonable application of Supreme Court law only if the state court's application of law to the

16   facts is not merely erroneous, but "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75

17   (2003).  Thus, "[o]nly if the evidence is 'too powerful to conclude anything but' the contrary"

18   should the court grant relief. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc)

19   (quoting *Miller-El v. Dretke*, 545 U.S. 231, 265 (2005)).  The petitioner bears the burden of showing

20   that the state court's decision was unreasonable. *Visciotti*, 537 U.S. at 25.

21

22                                    **II.**

23   **THE EXCLUSION OF A WITNESS STATEMENT IDENTIFYING
     ANOTHER INDIVIDUAL AS THE SHOOTER DID NOT DENY
24   PETITIONER DUE PROCESS**

25       Petitioner contends that the exclusion of a tape-recorded statement of a witness identifying

26   another individual as the shooter violated his right to due process and to present a defense.  There

27   is no merit to petitioner's claim.

28

Memo. of Pts. and Auths. in Support of Answer                              Brown v. Kernan
                                                                           C 06-4194 MJJ (PR)

1      **A.   Trial Court Proceedings**

2          Before trial, petitioner filed a motion in limine seeking to admit evidence of an

3  exculpatory witness's tape-recorded statement to the police under the spontaneous declaration

4  exception to the hearsay rule.  Exh. 1F at 1432-1433.  Petitioner sought to admit the tape-recorded

5  statement because the witness was unavailable to testify at trial, having died shortly after the

6  shooting.  Exh. 1F at 1432-1433.

7          Petitioner offered the following evidence in support of his motion:  At the scene of the

8  shooting, Sergeant Cruz questioned Ophelia Olguin, who claimed to have witnessed the shooting.

9  Exh. 1D at 1008-1010.  Olguin went to the police station for an interview.  Exh. 1D at 1010-1011.

10 At the station, Sergeant Cruz noticed that Olguin's pupils were constricted, that she had trouble

11 standing, that her speech was thick and slurred, that she had difficulty understanding questions, and

12 that she had trouble staying awake.  Exh. 1D at 1056.  Her symptoms led him to believe she was

13 under the influence of heroin.  Exh. 1D at 1055; Exh. 1E at 1086.  Despite Olguin's symptoms of

14 intoxication, Sergeant Cruz decided to go ahead with the interview.  Exh. 1E at 1087.  Olguin died

15 one month later.  Exh. 1F at 1433.

16         Sergeant Cruz began interviewing Olguin approximately three to four hours after the

17 shooting.  Exh. 1D at 1008, 1011.  Olguin said that she had been standing across the street when she

18 saw "a black guy and two Mexicans arguing and one pulled out a gun and shot him."  Exh. 1H at

19 1936.  Olguin was familiar with the victim, whom she knew as "Marcus," but she had never seen

20 the Hispanic men before.  Exh. 1H at 1937, 1942.  She described the Hispanic men and identified

21 the "chubbier one" as the shooter.  Exh. 1H at 1938-1940.  She said that they both ran away after

22 the shooting.  Exh. 1H at 1936, 1941.

23         After reviewing Sergeant Cruz's preliminary hearing testimony, a tape recording of

24 Sergeant Cruz's interview with Olguin, and a transcript of the interview, Exh. 2A at 129-133, 149-

25 150, 156, the trial court refused to admit Olguin's statement into evidence, giving the following

26 reasons in support of its decision:

27             This is not a spontaneous declaration.  Numerous factors beyond time, question
              and answer, her whole attitude, her tone, even beyond the description of her as

28

Memo. of Pts. and Auths. in Support of Answer                                    Brown v. Kernan
                                                                                 C 06-4194 MJJ (PR)

1    a heroin addict who appears to be under its influence.  She certainly sounds
     mellowed out.  On that ground, I will not allow it in.
2

3   Exh. 2A at 159.

4        **B.    Court Of Appeal Opinion**

5        The California Court of Appeal concluded that the trial court did not abuse its discretion

6   in refusing to admit the tape-recorded interview under the spontaneous declaration exception to the

7   hearsay rule.  Exh. 3 at 5.  The appellate court found that the trial court properly relied on several

8   factors in support of its decision, including "the elapsed time between the killing and the

9   questioning, the question and answer framework of Ms. Olguin's statements, her attitude toward the

10  questioning, and the tone of her voice and comments, which 'sound[ed] mellowed out.'" Exh. 3 at

11  5.  The appellate court found no objective evidence that Olguin was still under the stress of

12  excitement from the incident during the interview.  Exh. 3 at 5-6.  Rather, the court found evidence

13  to the contrary:

14        The questioning occurred three to four hours after the incident, sufficient time
          for any initial excitement to fade.  There was no element of urgency or
15        spontaneity apparent in Ms. Olguin's responses to the police questions, and
          there is no other evidence that her "mental state" was the least bit excited
16        during the questioning.  On the contrary, the trial court found her tone to be
          "mellowed out."  Other than the objective fact that Ms. Olguin had witnessed
17        a brutal murder several hours before, there is no reason to believe that she was
          at all excited by the time the police began to interview her.
18

19  Exh. 3 at 5, footnote omitted.

20        The Court of Appeal additionally concluded that "[b]ecause this evidence was hearsay and

21  not admissible under any recognized exception to the hearsay rule, the trial court's exclusion did not

22  prevent defendant from exercising his constitutional right to present a complete defense."  Exh. 3

23  at 7, citing *United States v. Scheffer*, 523 U.S. 303, 308 (1998), and *Zarvela v. Artuz*, 364 F.3d 415,

24  418 (2d Cir. 2004).

25        **C.    The Exclusion Of Olguin's Statement Did Not Deny Petitioner Due Process**

26        Federal habeas review does not lie to review a state court's evidentiary ruling, unless it

27  was so prejudicial as to constitute a violation of due process.  *Estelle v. McGuire*, 502 U.S. 62, 67

28

Memo. of Pts. and Auths. in Support of Answer                          Brown v. Kernan
                                                                       C 06-4194 MJJ (PR)

1   (1991); *Jeffries v. Blodgett*, 5 F.3d 1180, 1192 (9th Cir. 1993). "'[S]tate and federal rulemakers

2   have broad latitude under the Constitution to establish rules excluding evidence from criminal

3   trials.'" *Holmes v. South Carolina*, 126 S. Ct. 1727, 1731 (2006) (quoting *United States v. Scheffer*,

4   523 U.S. 303, 308 (1998)). A defendant "does not have an unfettered right to offer testimony that

5   is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v.*

6   *Illinois*, 484 U.S. 400, 410 (1988). "It is clearly established federal law, as determined by the

7   Supreme Court, that when a hearsay statement bears persuasive assurances of trustworthiness and

8   is critical to the defense, the exclusion of that statement may rise to the level of a due process

9   violation." *Chia v. Cambra*, 360 F.3d 997, 1003 (9th Cir. 2004). Here, the excluded statement did

10  not meet this test.

11          In *Chambers v. Mississippi*, 410 U.S. 284 (1973), the Supreme Court held that due process

12  "is, in essence, the right to a fair opportunity to defend against the State's accusations." *Id.* at 294.

13  There, the excluded evidence consisted of the hearsay testimony of three witnesses who had heard

14  another man confess to the charged crime. *Id.* at 292-293. The Court found a due process violation

15  because the evidence had "persuasive assurances of trustworthiness" and was "critical" to the

16  defense. *Id.* at 302. The ruling in *Chambers* demonstrates "the unusually compelling circumstances

17  required to outweigh the strong state interest in administration of its trials." *Perry v. Rushen*, 713

18  F.2d 1447, 1452 (9th Cir. 1983).

19          Similarly compelling circumstances are absent in this case. Here, Olguin claimed to have

20  witnessed the shooting. However, there was no independent or corroborating evidence that she was

21  an eyewitness. Further, no other witnesses or evidence corroborated Olguin's identification of a

22  Hispanic man as the shooter. Buchanan, Perez, and Vargas, on the other hand, gave consistent

23  accounts regarding each other's presence at the scene of the shooting, and all three identified

24  petitioner as the shooter. Exh. 2C at 635-639, 656-657; Exh. 2D at 901-904; Exh. 2E at 949-950;

25  Exh. 2G at 1431, 1441; Exh. 2H at 1591-1593, 1597-1598. Olguin's account of the shooting was

26  further rendered suspect by her vantage point from across the street, the fact that the shooting

27  occurred late at night when it was dark outside, and her intoxicated state. Under these

28

1   circumstances, Olguin's statement to the police did not bear "persuasive assurances of

2   trustworthiness."  Accordingly, the trial court's exclusion of the statement did not deny petitioner

3   due process.

4       **D.   Harmless Error**

5           Even if this Court were to find a due process violation, it must determine if the error was

6   prejudicial.  *Fry v. Pliler*, 127 S. Ct. 2321, 2328 (2007).  On federal habeas corpus review, the

7   question is whether the error had a substantial or injurious effect on the verdict.  *Id.*, *citing Brecht*

8   *v. Abrahamson*, 507 U.S. 619 (1993).  As noted above, Buchanan, Perez, and Vargas, who were in

9   close proximity to the victim when he was shot, identified petitioner as the shooter.  In addition, the

10  evidence showed that petitioner had a motive to shoot the victim, and that he attempted to dissuade

11  Vargas from testifying at trial.  Exh. 2F at 1131-1134, 1139-1140; Exh. 2G at 1388; Exh. 2H at

12  1566, 1570-1572.  Given such compelling evidence of petitioner's guilt, the exclusion of Olguin's

13  statement, which was suspect for the reasons set forth above, did not have a substantial or injurious

14  effect on the verdict.

15

16                                   **III.**

17  **THE ADMISSION OF PRIOR CRIMES EVIDENCE AND EXPERT
    TESTIMONY DID NOT DENY PETITIONER DUE PROCESS**

18

19          Petitioner contends that the admission of evidence of his prior drug crimes and related

20  expert testimony violated his right to due process and equal protection.  Petitioner's claim lacks

21  merit.

22      **A.   Trial Court Proceedings**

23          Before trial, the prosecution moved to admit evidence of petitioner's prior drug crimes,

24  as well as expert testimony regarding drug dealing in Oakland. Exh. 1F at 1393-1397.  The evidence

25  was offered to prove the prosecution's theory of the case—that the murder was motivated by a

26  dispute between petitioner and the victim over the victim's competing drugs sales in petitioner's

27  territory.  Exh. 2A at 200-259; Exh. 2B at 289-335.  The trial court ruled that it would allow the

28

Memo. of Pts. and Auths. in Support of Answer                    Brown v. Kernan
                                                                 C 06-4194 MJJ (PR)

1    expert testimony and evidence of specific instances of petitioner's prior drug crimes as an adult.

2    Exh. 2A at 259; Exh. 2B at 289-335.

3          At trial, the prosecution presented the testimony of two police officers who had seen

4    petitioner dealing drugs near the scene of the shooting.  Exh. 2G at 1266-1279, 1316-1321.  In

5    addition, petitioner stipulated that he was arrested on two other occasions for selling cocaine and

6    on one other occasion for being under the influence of marijuana while on probation.  Exh. 2G at

7    1326-1331.  The prosecution also presented expert testimony that the area of the shooting was a

8    frequent scene of drug sales, that location was an important factor in successful drug dealing, and

9    that violence can erupt between drug dealers when disputes arise over customers or territory.  Exh.

10   2G at 1379-1389.

11   **B.   Court Of Appeal Opinion**

12         The Court of Appeal found no error in the admission of the expert testimony.  The court

13   also found no error in the admission of the evidence of petitioner's prior drug dealing.  Exh. 3 at 9-

14   12.  As the court explained, such evidence was material because it offered a motive for the shooting,

15   i.e., petitioner was upset with the victim for dealing drugs in his territory, and was relevant because

16   it tended to prove that petitioner shot the victim.  Exh. 3 at 9-12.

17         The Court of Appeal concluded, however, that while the drug dealing evidence was

18   properly admitted, it was admissible only for the purpose of proving motive.  Exh. 3 at 12-13.

19   Consequently, the trial court's limiting instruction allowing the jury consider the evidence for both

20   purposes of motive and identity was erroneous.  Exh. 3 at 12-13.  The appellate court found the

21   instruction harmless, however, because petitioner's identity as the shooter was not in serious dispute

22   at trial.  Exh. 3 at 14.

23         Finally, the Court of Appeal concluded that the evidence of petitioner's prior consumption

24   of marijuana was neither material nor probative of the charges in the case.  Exh. 3 at 12.  However,

25   the court concluded that the admission of such evidence was harmless because it was "simply

26   inconsequential."  Exh. 3 at 14.

27

28

Memo. of Pts. and Auths. in Support of Answer                                      Brown v. Kernan
                                                                                   C 06-4194 MJJ (PR)

**C.  The Admission Of Prior Crimes Evidence And Expert Testimony Did Not Deny Petitioner Due Process or Have a Substantial or Injurious Effect on the Verdict**

The admission of evidence violates due process "[o]nly if there are *no* permissible inferences the jury may draw from the evidence . . . . Even then, the evidence must 'be of such character as necessarily prevents a fair trial.'" *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991).  Accordingly, even if evidence is not clearly probative, its admission does not violate due process unless the evidence was so prejudicial as to render the trial fundamentally unfair. *Romano v. Oklahoma*, 512 U.S. 1, 12-13 (1994).  Moreover, the Supreme Court has clearly established the principle that a state practice allowing a jury to hear evidence of prior crimes does not violate due process when the trial court gives a limiting instruction and retains its discretion to limit or forbid the admission of particularly prejudicial evidence. *Spencer v. Texas*, 385 U.S. 554, 561 (1967).

Petitioner has failed to establish how the admission of the prior crime evidence and expert testimony violated his due process rights.  As the California Court of Appeal found, his prior drug dealing in the area of the shooting and the expert testimony regarding territorial disputes between drug dealers was probative of his motive for the shooting.  As there were permissible inferences the jury could draw from the prior crime evidence and expert testimony, the admission of such evidence did not constitute a denial of due process. *Jammal v. Van de Kamp,* 926 F.2d at 920.  Moreover, any possible prejudice from the prior crimes evidence was mitigated by appellant's admission during his testimony that he sold drugs, as well as the trial court's limiting instruction to the jury.  The trial court instructed the jury that it could consider the prior crimes evidence for the limited purposes of proving motive and identity, but not as evidence of criminal propensity.  Exh. 1H at 1821.  Even if the trial court erred in including identity in the limiting instruction, such error was harmless given that three eyewitnesses identified petitioner as the shooter.  Further, any possible prejudice from the expert testimony was mitigated by Buchanan's testimony that petitioner had threatened the victim for selling drugs in his territory.  Accordingly, the admission of the prior crime evidence and expert testimony did not have a substantial or injurious effect on the verdict. *Fry v. Pliler*, 127 S. Ct. at 2328.

# IV.

## PETITIONER'S CLAIM OF INSUFFICIENT EVIDENCE IS PROCEDURALLY DEFAULTED AND MERITLESS

Petitioner contends that his murder conviction violates due process because it is based on insufficient evidence. The sufficiency-of-the-evidence claim must be rejected because it is procedurally barred and meritless.

### A.    Petitioner's Claim Has Been Procedurally Defaulted

Petitioner challenged the sufficiency of the evidence supporting his murder conviction, along with the trial court's admission of identification evidence, for the first time in a habeas corpus petition filed in the California Supreme Court. Exh. 6. The Supreme Court denied the petition with citations to *In re Seaton*, 34 Cal. 4th 193, and *In re Dixon*, 41 Cal. 2d 756. Exh. 7. Those cases set forth two separate procedural bars. *Seaton* bars a habeas claim that was not raised at trial, *In re Seaton*, 34 Cal. 4th at 200, while *Dixon* bars a habeas claim that should have been raised on direct appeal. *In re Dixon*, 41 Cal. 2d at 759.

Under California law, a criminal defendant need not object to the sufficiency of the evidence at trial in order to preserve the issue on appeal. *See, e.g., People v. Butler*, 31 Cal. 4th 1119, 1126 (2003); *People v. Rodriguez*, 17 Cal. 4th 253, 262 (1998). However, a defendant is required to raise such a claim on direct appeal rather than on habeas corpus. *In re Lindley*, 29 Cal. 2d 709, 723 (1947). It thus appears that *Dixon*, not *Seaton*, applies to petitioner's claim of insufficient evidence.

Under the procedural default doctrine, federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). A state procedural bar is independent if the state law ground for decision does not appear to "rest primarily on federal law" or to be "interwoven with the federal law," *Michigan v. Long*, 463 U.S. 1032, 1040-1041 (1983), and is adequate if it is "'firmly established and regularly followed' by the time as of which it is to be applied." *Ford v. Georgia*, 498 U.S. 411, 424

1  (1991).

2    The Ninth Circuit has held that, before 1998, when the California Supreme Court decided

3  *In re Robbins*, 18 Cal. 4th 770 (1998), the *Dixon* rule did not constitute independent state grounds

4  for a decision because there was an exception to imposing the bar for "fundamental constitutional

5  error." *Park v. California*, 202 F.3d 1146, 1152-1153 (9th Cir. 2000). More recently, however, the

6  Ninth Circuit held that a post-*Robbins* citation to *Dixon* constitutes an independent state ground for

7  a decision. *See Bennett v. Mueller*, 322 F.3d 573, 582-583 (9th Cir. 2003) (noting that the purpose

8  of *Robbins* was to establish the adequacy and independence of the state Supreme Court's future

9  *Dixon*/*Robbins* rulings, and finding that a post-*Robbins* denial for lack of diligence (untimeliness)

10  was an independent procedural ground).

11    The Ninth Circuit has also set out a procedure for determining whether a state procedural

12  bar is adequate. Once the State has pled the existence of an independent and adequate state

13  procedural ground, the petitioner then has the burden of "asserting specific factual allegations that

14  demonstrate the inadequacy of the state procedure, including citation to authority demonstrating

15  inconsistent application of the rule." *Bennett*, 322 F.3d at 586. If the petitioner meets that burden,

16  the ultimate burden then shifts to the State to show that the state procedural rule has been regularly

17  and consistently applied in habeas actions. *Id.*

18    In the instant case, the California Supreme Court denied petitioner's state habeas petition

19  on June 14, 2006, about eight years after its decision in *Robbins*. Thus, the citation to *Dixon* in this

20  case was an independent state court ground for denying the petition. Respondent also asserts that,

21  at least since *Robbins*, the California Supreme Court has regularly and consistently applied the

22  *Dixon* bar, thus providing an adequate state court ground for denying the petition. *See Protsman v.*

23  *Pliler*, 318 F. Supp. 2d 1004, 1008-1009, 1013-1014 (S.D. Cal. 2004) (finding *Dixon* bar to be

24  independent and adequate). Accordingly, unless petitioner is able to make specific factual

25  allegations demonstrating the inadequacy of the *Dixon* bar, his claim of insufficient evidence is

26  procedurally barred absent a showing of cause and prejudice or a fundamental miscarriage of justice.

27  *Coleman v. Thompson*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 262 (1989); *Poland v.*

28

1    *Stewart*, 169 F.3d 573, 577 (9th Cir. 1999).  As petitioner has made no such showing in this case,

2    federal review of his claim is precluded.

3    **B.    Sufficient Evidence Supports Petitioner's Conviction**

4    Even if petitioner has not procedurally defaulted his claim of insufficient evidence, his

5    claim lacks merit.  In deciding a claim of sufficiency of the evidence, the court must determine

6    whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier

7    of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*

8    *v. Virginia*, 443 U.S. 307, 319 (1979).

9    Petitioner contends that the testimony of the three eyewitnesses identifying him as the

10   shooter was suspect for three reasons:  (1) the photographic lineup shown to Perez and Vargas by

11   the police was "unduly suggestive"; (2) none of the eyewitnesses were credible; and (3) the jury

12   would have viewed the identification evidence differently had the trial court admitted Olguin's

13   statement to the police in which she identified a Hispanic man as the shooter.  Petition at 6n.

14   Petitioner, however, presented his views of the photographic lineup and the credibility of the

15   eyewitnesses to the jury, Exh. 2J at 2086-2088, 2092-2094, 2096, 2098-2100, 2102, 2105, 2108-

16   2109, 2114-2115, and the jury necessarily rejected his views in convicting him of murder.  It was

17   the province of the jury to weigh the evidence and determine the credibility of the witnesses,

18   *Jackson*, 443 U.S. at 319, and petitioner's mere disagreement with them is not enough to make out

19   a claim of insufficient evidence.

20   Nor is there any merit to petitioner's claim that the jury would have been swayed by

21   Olguin's identification of a Hispanic man as the shooter.  As noted above, Olguin's identification

22   was unreliable for many reasons, and properly excluded by the trial court.  But even if it had been

23   admitted, a rational trier of fact still would have convicted petitioner given the overwhelming

24   evidence of his guilt, including his motive to kill the victim, along with the corroborating testimony

25   of the three eyewitnesses, who were in close proximity to the victim at the time of the shooting.  In

26   sum, such evidence was sufficient to support petitioner's conviction, and no violation of due process

27   is shown.  The state court's rejection of this claim was a reasonable application of *Jackson*.

28

# V.

## PETITIONER'S CLAIM CHALLENGING THE ADMISSION OF THE IDENTIFICATION EVIDENCE IS PROCEDURALLY DEFAULTED AND MERITLESS

Petitioner contends that the admission of identification evidence violated his right to due process. Like his insufficiency-of-the-evidence claim, however, petitioner's evidentiary claim is procedurally defaulted and meritless.

### A.    Petitioner's Claim Has Been Procedurally Defaulted

As noted above, petitioner challenged the trial court's admission of identification evidence, along with the sufficiency of the evidence supporting his murder conviction, for the first time in a habeas corpus petition filed in the California Supreme Court. Exh. 6. The Supreme Court denied the petition with citations to *In re Seaton*, 34 Cal. 4th 193, and *In re Dixon*, 41 Cal. 2d 756. Exh. 7. As previously noted, *Seaton* bars a habeas claim that was not raised at trial, *In re Seaton*, 34 Cal. 4th at 200, while *Dixon* bars a habeas claim that should have been raised on direct appeal. *In re Dixon*, 41 Cal. 2d at 759.

Under California's so-called "contemporaneous objection rule," a criminal defendant is required to raise an objection to the admission of evidence in the trial court in order to preserve the issue for appeal or habeas corpus. *In re Seaton*, 34 Cal. 4th at 198, 200; Cal. Evid. Code § 353. Additionally, a defendant's failure to challenge the admission of evidence on appeal bars review of the claim on habeas corpus. *In re Lindley*, 29 Cal. 2d at 723. Before trial in this case, petitioner sought to suppress any "in-court observation of Jose Vargas and all the other people who identified the individual in th[]e photographic lineups," Exh. 1A at 97, but did not seek to suppress the out-of-court photographic lineup evidence itself. Nor did he object to such evidence at the time it was introduced at trial. *See* Exh. 2C at 651-657; Exh. 2E at 946-951; Exh. 2G at 1427-1449. Petitioner additionally failed to raise this issue on appeal. It thus appears that both *Seaton* and *Dixon* apply to petitioner's claim regarding the admission of the identification evidence.

For the same reasons set forth above, the California Supreme Court's citations to *Seaton* and *Dixon* were independent state grounds for denying the petition. Moreover, as noted above,

1  *Dixon* is an adequate state procedural bar.  Further, the Ninth Circuit has repeatedly found

2  California's contemporaneous objection rule to be an adequate state procedural bar.  *See Davis v.*

3  *Woodford*, 384 F.3d 628, 653-654 (9th Cir. 2004); *Melendez v. Pliler*, 288 F.3d 1120, 1125 (9th Cir.

4  2002); *Rich v. Calderon*, 187 F.3d 1064, 1069-1070 (9th Cir. 1999); *Vansickel v. White*, 166 F.3d

5  953, 957-958 (9th Cir. 1999); *Bonin v. Calderon*, 59 F.3d 815, 842-843 (9th Cir. 1995); *Nevius v.*

6  *Sumner*, 852 F.2d 463, 470 (9th Cir. 1988); *Hines v. Enomoto*, 658 F.2d 667, 673 (9th Cir. 1981),

7  reversed on other grounds in *Ross v. Oklahoma*, 487 U.S. 81 (1988); *Garrison v. McCarthy*, 653

8  F.2d 374, 377 (9th Cir. 1981).  Accordingly, federal review of petitioner's claim is precluded unless

9  he can demonstrate cause and prejudice or a fundamental miscarriage of justice.  *Coleman v.*

10  *Thompson*, 501 U.S. at 750.  As petitioner has made no such showing in this case, his claim cannot

11  be reviewed by this Court.

12    **B.    The Admission Of The Identification Evidence Did Not Deny Petitioner Due**
           **Process**

13

14    Even if petitioner's claim were not procedurally defaulted, it is meritless.  During trial,

15  the jury heard evidence that after the shooting, Perez and Vargas identified petitioner as the shooter

16  from a photographic lineup.  Exh. 2C at 651-657; Exh. 2E at 946-951; Exh. 2G at 1427-1449.

17  Petitioner contends that such evidence should have been excluded because the procedures

18  surrounding the photographic lineup were "impermissibly suggestive."  Petition at 60.

19    The admission of evidence violates due process "[o]nly if there are no permissible

20  inferences the jury may draw from the evidence . . . Even then, the evidence must 'be of such

21  character as necessarily prevents a fair trial.'"  *Jammal v. Van de Kamp*, 926 F.2d at 920.  Petitioner

22  has failed to establish how the trial court violated his due process rights by admitting the

23  identification evidence.  Perez's and Vargas's identification of petitioner as the shooter from the

24  photographic lineup tended to prove his guilt.  As there was a permissible inference the jury could

25  draw from such evidence, its admission did not constitute a denial of due process.

26    Petitioner complains that at the time Perez looked at the photographic lineup containing

27  petitioner's photograph, Vargas had already picked petitioner out of the lineup and signed his name

28

on the back of the photograph.  Petition at 6o.  As the jury heard, however, Perez could not see Vargas's signature when he looked at the photograph of petitioner.  Exh. 2E at 950-951.  Moreover, after Perez picked petitioner's photograph out of the lineup, Sergeant Cruz carefully covered up Vargas's signature before turning the photograph over to have Perez sign it.  Exh. 2G at 1442.  The lineup was not therefore impermissibly suggestive as petitioner contends.  Thus, even if there were no permissible inferences the jury could draw from the evidence, the evidence itself was not of such a character that necessarily prevented a fair trial.  Accordingly, no due process violation is shown, and the state court's rejection of the claim was a reasonable application of Supreme Court precedent.  Finally, because both witnesses identified petitioner as the shooter at trial, the admission of the identification evidence had no substantial or injurious effect on the jury's verdict.  *Fry v. Pliler*, 127 S. Ct. at 2328.

1

**CONCLUSION**

2        Accordingly, respondent respectfully requests that the petition for writ of habeas corpus

3  be denied.

4        Dated:  July 27, 2007

5                    Respectfully submitted,

6                    EDMUND G. BROWN JR.
Attorney General of the State of California

7                    DANE R. GILLETTE
Chief Assistant Attorney General

8

9                    GERALD A. ENGLER
Senior Assistant Attorney General

10                 GREGORY A. OTT
Deputy Attorney General

11

12                 /s/ Michele J. Swanson
MICHELE J. SWANSON

13                 Deputy Attorney General

14                 Attorneys for Respondent

15  20097552.wpd
    SF2006403386

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

STATEMENT OF THE CASE ........................................................... 1

STATEMENT OF FACTS ............................................................... 2

ARGUMENT ............................................................................... 3

    **I.    STANDARD OF REVIEW** ............................................. 3

    **II.   THE EXCLUSION OF A WITNESS STATEMENT IDENTIFYING ANOTHER INDIVIDUAL AS THE SHOOTER DID NOT DENY PETITIONER DUE PROCESS** ............................................. 3

        A.   Trial Court Proceedings ......................................... 4

        B.   Court Of Appeal Opinion ...................................... 5

        C.   The Exclusion Of Olguin's Statement Did Not Deny Petitioner Due Process ............................................. 5

        D.   Harmless Error ..................................................... 7

    **III.  THE ADMISSION OF PRIOR CRIMES EVIDENCE AND EXPERT TESTIMONY DID NOT DENY PETITIONER DUE PROCESS** ............................................. 7

        A.   Trial Court Proceedings ......................................... 7

        B.   Court Of Appeal Opinion ...................................... 8

        C.   The Admission Of Prior Crimes Evidence And Expert Testimony Did Not Deny Petitioner Due Process or Have a Substantial or Injurious Effect on the Verdict ............................................. 9

    **IV.  PETITIONER'S CLAIM OF INSUFFICIENT EVIDENCE IS PROCEDURALLY DEFAULTED AND MERITLESS** ............................................. 10

        A.   Petitioner's Claim Has Been Procedurally Defaulted ............................................. 10

        B.   Sufficient Evidence Supports Petitioner's Conviction ............................................. 12

    **V.   PETITIONER'S CLAIM CHALLENGING THE ADMISSION OF THE IDENTIFICATION EVIDENCE IS PROCEDURALLY DEFAULTED AND MERITLESS** ............................................. 13

        A.   Petitioner's Claim Has Been Procedurally Defaulted ............................................. 13

        B.   The Admission Of The Identification Evidence Did Not Deny Petitioner Due Process ............................................. 14

CONCLUSION ........................................................................... 16

1

# TABLE OF AUTHORITIES

2                                                                              **Page**

3    **Cases**

4    *Bennett v. Mueller*
     322 F.3d 573 (9th Cir. 2003)                                              11
5
     *Bonin v. Calderon*
6    59 F.3d 815 (9th Cir. 1995)                                               14

7    *Brecht v. Abrahamson*
     507 U.S. 619 (1993)                                                       7
8
     *Chambers v. Mississippi*
9    410 U.S. 284 (1973)                                                       6

10   *Chia v. Cambra*
     360 F.3d 997 (9th Cir. 2004)                                              6
11
     *Coleman v. Thompson*
12   501 U.S. 722 (1991)                                                       10, 11, 14

13   *Davis v. Woodford*
     384 F.3d 628 (9th Cir. 2004)                                              14
14
     *Edwards v. Lamarque*
15   475 F.3d 1121 (9th Cir. 2007)                                             3

16   *Estelle v. McGuire*
     502 U.S. 62 (1991)                                                        5
17
     *Ford v. Georgia*
18   498 U.S. 411 (1991)                                                       10

19   *Fry v. Pliler*
     127 S. Ct. 2321 (2007)                                                    7, 9, 15
20
     *Garrison v. McCarthy*
21   653 F.2d 374 (9th Cir. 1981)                                              14

22   *Harris v. Reed*
     489 U.S. 255 (1989)                                                       11
23
     *Hines v. Enomoto*
24   658 F.2d 667 (9th Cir. 1981)                                              14

25   *Holmes v. South Carolina*
     126 S. Ct. 1727 (2006)                                                    6
26
     *In re Dixon*
27   41 Cal. 2d 756 (1953)                                                     2, 10, 11, 13

28

Memo. of Pts. and Auths. in Support of Answer                    Brown v. Kernan
                                                                 C 06-4194 MJJ (PR)

**TABLE OF AUTHORITIES**  (continued)

Page

*In re Lindley*
29 Cal. 2d 709 (1947)                                    10, 13

*In re Robbins*
18 Cal. 4th 770 (1998)                                       11

*In re Seaton*
34 Cal. 4th 193 (2004)                                 2, 10, 13

*Jackson v. Virginia*
443 U.S. 307 (1979)                                          12

*Jammal v. Van de Kamp*
926 F.2d 918 (9th Cir. 1991)                              9, 14

*Jeffries v. Blodgett*
5 F.3d 1180 (9th Cir. 1993)                                   5

*Lockyer v. Andrade*
538 U.S. 63 (2003)                                            3

*Melendez v. Pliler*
288 F.3d 1120 (9th Cir. 2002)                                14

*Michigan v. Long*
463 U.S. 1032 (1983)                                         10

*Miller-El v. Dretke*
545 U.S. 231 (2005)                                           3

*Nevius v. Sumner*
852 F.2d 463 (9th Cir. 1988)                                 14

*Park v. California*
202 F.3d 1146 (9th Cir. 2000)                                11

*People v. Butler*
31 Cal. 4th 1119 (2003)                                      10

*People v. Rodriguez*
17 Cal. 4th 253 (1998)                                       10

*Perry v. Rushen*
713 F.2d 1447 (9th Cir. 1983)                                 6

*Poland v. Stewart*
169 F.3d 573 (9th Cir. 1999)                                 11

*Protsman v. Pliler*
318 F. Supp. 2d 1004 (S.D. Cal. 2004)                        11

**TABLE OF AUTHORITIES**  (continued)

1

2                                                                    **Page**

3      *Rich v. Calderon*
       187 F.3d 1064 (9th Cir. 1999)                                    14

4      *Romano v. Oklahoma*
       512 U.S. 1 (1994)                                                 9

5
       *Ross v. Oklahoma*
6      487 U.S. 81 (1988)                                               14

7      *Spencer v. Texas*
       385 U.S. 554 (1967)                                               9

8      *Taylor v. Illinois*
9      484 U.S. 400 (1988)                                               6

10     *United States v. Scheffer*
       523 U.S. 303 (1998)                                             5, 6

11     *Vansickel v. White*
12     166 F.3d 953 (9th Cir. 1999)                                     14

13     *Woodford v. Visciotti*
       537 U.S. 19 (2002)                                                3

14     *Zarvela v. Artuz*
15     364 F.3d 415 (2d Cir. 2004)                                       5

16     **Statutes**

17     California Evidence Code
18        § 353                                                         13

19     United States Code, Title 28
          § 2254(d)(1)                                                   3

20

21     **Other Authorities**

22     Antiterrorism and Effective Death Penalty Act of 1996             3

23

24

25

26

27

28

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  GREGORY A. OTT
   Deputy Attorney General
5  MICHELE J. SWANSON, State Bar No. 191193
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5703
    Fax:  (415) 703-1234
8   Email:  Michele.Swanson@doj.ca.gov
   Attorneys for Respondent
9

10                 IN THE UNITED STATES DISTRICT COURT
11
               FOR THE NORTHERN DISTRICT OF CALIFORNIA
12
                      SAN FRANCISCO DIVISION
13

14  **TRACY JAMAR BROWN,**                    C 06-4194 MJJ (PR)

15                           Petitioner,      **NOTICE OF LODGING AND
                                              INDEX OF RECORDS
16           v.                               PURSUANT TO LOCAL
                                              RULE 2254-6(b)(3)**
17  **SCOTT KERNAN, Warden,**

18                           Respondent.

19

20          Notice is hereby given that the following exhibits are lodged in support of

21  respondent's answer and memorandum of points and authorities:

22          **EXHIBIT**                           **TITLE**

23          1A to 1H              State Court Clerk's Transcript

24          2A to 2J              State Court Reporter's Transcript

25          3                     Opinion by the California Court of Appeal

26          4                     Petition for Review

27          5                     Order of the California Supreme Court Denying Review

28  ///

Not. of Lodg. and Index of Recs. Pursuant to Local Rule 2254-6(b)(3)          Brown v. Kernan, Warden
                                                                              C 06-4194 MJJ (PR)

1

| | EXHIBIT | TITLE |
|---|---|---|
| 1 | | |
| 2 | 6 | Petition for Writ of Habeas Corpus |
| 3 | 7 | Order of the California Supreme Court Denying Petition |

Dated:  July 27, 2007

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

DANE R. GILLETTE
Chief Assistant Attorney General

GERALD A. ENGLER
Senior Assistant Attorney General

GREGORY A. OTT
Deputy Attorney General


/s/ Michele J. Swanson
MICHELE J. SWANSON
Deputy Attorney General
Attorneys for Respondent

20097677.wpd
SF2006403386

Not. of Lodg. and Index of Recs. Pursuant to Local Rule 2254-6(b)(3)          Brown v. Kernan, Warden
C 06-4194 MJJ (PR)

2

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:    **Brown v. Kernan, Warden**

No.:    **C 06-4194 MJJ (PR)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made.  I am 18 years of age or older and not a party to this matter; my business address is 455 Golden Gate Avenue, Suite 11000, San Francisco, CA  94102-7004.

On <u>July 27, 2007</u>, I served the attached

**ANSWER TO ORDER TO SHOW CAUSE**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER**

**NOTICE OF LODGING AND INDEX OF RECORDS PURSUANT TO LOCAL RULE 2254-6(b)3)**

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States Mail at San Francisco, California, addressed as follows:

Tracy Jamar Brown
T-86155
California State Prison - Sacramento
P.O. Box 29
Represa, CA  95671

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on July 27, 2007, at San Francisco, California.

| M. Argarin | /s/ M. Argarin |
|:----------:|:--------------:|
| Declarant  | Signature      |

20098060.wpd