NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TRACY JAMAR BROWN, | ) | No. C 06-04194 JF (PR) |
| Petitioner, | ) | |
| | ) | ORDER DENYING PETITION FOR |
| vs. | ) | WRIT OF HABEAS CORPUS |
| | ) | |
| | ) | |
| SCOTT KERNAN, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner, a California prisoner proceeding pro se, seeks a writ of habeas corpus
pursuant to 28 U.S.C. § 2254. The Court ordered Respondent to show cause why the
petition should not be granted. Respondent filed an answer and a supporting
memorandum of points and authorities addressing the merits of the petition, and
Petitioner filed a traverse. Having reviewed the papers and the underlying record, the
Court concludes that Petitioner is not entitled to habeas corpus relief and will deny the
petition.

///

///

///

**PROCEDURAL BACKGROUND**

An Alameda Superior Court jury convicted Petitioner of first degree murder pursuant to California Penal Code § 187 and found that Petitioner used a handgun within the meaning of Penal Code § 12022.53(d).  On March 14, 2003, Petitioner was sentenced to a term of fifty years-to-life in prison.

Petitioner appealed the judgment.  The state appellate court affirmed the judgment on February 15, 2005.  The state supreme court denied review on May 11, 2005.  Petitioner then sought habeas corpus relief in the state supreme court on August 24, 2005, which was denied on June 14, 2006.  Petitioner filed the instant federal action on July 6, 2006.

**FACTUAL BACKGROUND**

Petitioner does not dispute the following facts, which are taken from the unpublished opinion of the California Court of Appeal[1]:

> [Petitioner] and a codefendant, David Buchanan, were charged in an information filed August 17, 2001, with murder (Pen.Code, § 187), including the allegations that [Petitioner] personally used a handgun and caused great bodily injury in the commission of the offense (Pen. Code, §§ 12022.53, subd. (d), 1203.075) and had a prior narcotics conviction. (Health & Saf. Code, §11352.)
>
> [Petitioner] and Buchanan often sold rock cocaine near the corner of 28th Avenue and Foothill Boulevard in Oakland.  The murder victim, Marlis Cauley, was also a cocaine dealer.  Although Cauley had at one time worked from East 16th Street, sometime prior to the murder he relocated to 28th Avenue. [Petitioner], a longtime acquaintance of Cauley, acceded to Cauley's selling on 28th Avenue after learning that Cauley had been robbed while dealing at the prior location.  According to Buchanan's testimony, however, defendant and Cauley had an ongoing disagreement over Cauley's manner of selling cocaine.  Generally, dealers at a common location take turns making sales, but Cauley had a habit of dominating sales by aggressively approaching potential customers, a practice Buchanan referred to as "rushing the knocks [customers]."  Buchanan testified that on the evening of the murder, March 26, 2001, [Petitioner] had warned Cauley against "rushing the knocks" and threatened vague consequences if Cauley persisted in his aggressive selling practices.

---

[1] <u>People v. Brown</u>, No. A102130 (February 15, 2005) (Resp't Ex. 3 at 1-3).

On the night of the murder, Jose Vargas and Michael Perez, two cousins who were frequent customers of all three dealers, walked up 28th Avenue toward Foothill. As the cousins reached the corner, they saw [Petitioner] and Buchanan, both of whom approached them. Buchanan greeted Perez, Perez returned the greeting, and Buchanan attempted to initiate a drug transaction.

Almost immediately, Cauley appeared and began to approach the group. When Cauley reached Perez, he put his arm around Perez's shoulders and attempted to steer him from Buchanan and [Petitioner]. Seeing his potential customer taken away, Buchanan grabbed Perez in an apparent attempt to take money from Perez's pocket. Cauley then tried to separate Buchanan from Perez, and the three struggled, with Buchanan and Cauley pulling Perez in different directions.

At some point during this commotion, [Petitioner] moved closer to the group, raised a gun to Cauley's head, and shot him. Cauley put up his hands to his head, screamed in pain, and began jumping up and down. As Cauley did so, [Petitioner] fired the gun at least once more.

Cauley died from two gunshots to the back of his head. The pathologist who performed an autopsy on Cauley testified that after the first shot, which penetrated Cauley's scalp but not his skull, Cauley would have retained consciousness and been able to move and speak, but the second wound would have rendered him promptly unconscious.

Testifying in his own defense, [Petitioner] admitted to selling cocaine to the cousins on many occasions, but he denied being on 28th Avenue on the evening of the murder and shooting Cauley.

The jury acquitted Buchanan but convicted [Petitioner] of first degree murder and found to be true the allegation that he personally discharged a handgun. [Petitioner] was sentenced to a term of 50 years to life in prison.

## LEGAL CLAIMS

Petitioner asserts the following claims for relief: (1) the exclusion of a tape-recorded statement of a witness violated his rights to due process and to present a defense; (2) the admission of evidence of his other crimes violated his rights to due process and equal protection; (3) his conviction violated due process because it was based on insufficient evidence; and (4) the admission of identification evidence violated his right to due process.

///

///

///

1

**DISCUSSION**

2

**A.**    <u>Standard of Review</u>

3       Because the instant petition was filed after April 24, 1996, it is governed by the

4   Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), which imposes

5   significant restrictions on the scope of federal habeas corpus proceedings.  Under

6   AEDPA, a federal court may not grant habeas relief with respect to a state court

7   proceeding unless the state court's ruling was "contrary to, or involved an

8   unreasonable application of, clearly established federal law, as determined by the

9   Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an

10  unreasonable determination of the facts in light of the evidence presented in the State

11  court proceeding."  28 U.S.C. § 2254(d)(2).

12      "Under the 'contrary to' clause, a federal habeas court may grant the writ if the

13  state court arrives at a conclusion opposite to that reached by [the Supreme] Court on

14  a question of law or if the state court decides a case differently than [the] Court has on

15  a set of materially indistinguishable facts."  <u>Williams (Terry) v. Taylor</u>, 529 U.S. 362,

16  412-13 (2000).  "Under the 'unreasonable application clause,' a federal habeas court

17  may grant the writ if the state court identifies the correct governing legal principle

18  from [the] Court's decisions but unreasonably applies that principle to the facts of the

19  prisoner's case."  <u>Id.</u>  "[A] federal habeas court may not issue the writ simply because

20  the court concludes in its independent judgment that the relevant state-court decision

21  applied clearly established federal law erroneously or incorrectly.  Rather, that

22  application must also be unreasonable."  <u>Id.</u> at 411.

23      "[A] federal habeas court making the 'unreasonable application' inquiry should

24  ask whether the state court's application of clearly established federal law was

25  'objectively unreasonable.'"  <u>Id.</u> at 409.  In examining whether the state court decision

26  was objectively unreasonable, the inquiry may require analysis of the state court's

27  method as well as its result.  <u>Nunes v. Mueller</u>, 350 F.3d 1045, 1054 (9th Cir. 2003).

28  The "objectively unreasonable" standard does not equate to "clear error" because

1  "[t]hese two standards . . . are not the same.  The gloss of clear error fails to give

2  proper deference to state courts by conflating error (even clear error) with

3  unreasonableness."  Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

4       A federal habeas court may grant the writ if it concludes that the state court's

5  adjudication of the claim "resulted in a decision that was based on an unreasonable

6  determination of the facts in light of the evidence presented in the State court

7  proceeding."  28 U.S.C. § 2254(d)(2).  The court must presume correct any

8  determination of a factual issue made by a state court unless the Petitioner rebuts the

9  presumption of correctness by clear and convincing evidence.  28 U.S.C. §

10  2254(e)(1).

11  **B.**    **Analysis of Legal Claims**

12      1.    Exclusion of Tape-Recorded Statement

13       Petitioner claims that exclusion of the tape-recorded statement of an eyewitness

14  deprived him of his constitutional rights to due process and to present a defense.  (Pet.

15  at 6, 6a-f.)  Before trial, Petitioner filed a motion in limine to admit a tape-recorded

16  police interview of Ophelia Olguin, who had been standing across the street from the

17  shooting and had identified another individual as the shooter.  (Resp't Ex. 3 at 3.)

18  Petitioner had sought to admit the tape-recorded statement because Olguin was

19  unavailable to testify at trial, having died shortly after the shooting.  (Id. at 4.)  The

20  trial court ruled that the tape-recorded statement did not meet the "spontaneous

21  statement" exception to the hearsay rule under California Evidence Code section

22  1240, and the statement subsequently was excluded at trial.  (Id. at 3.)  The trial court's

23  finding that the spontaneous statement exception did not apply was based partly on the

24  fact that the interviewing officer described Ms. Olguin "as a heroin addict who

25  appear[ed] to be under its influence."  (Id. at 4.)

26       Due process may be violated when excluded hearsay testimony bears

27  "persuasive assurances of trustworthiness" and is "critical" to the defense.  Chambers

28  v. Mississippi, 410 U.S. 284, 302 (1973);  see also Chia v. Cambra, 360 F.3d 997,

1003 (9th Cir. 2004).  "State and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials."  <u>Holmes v. South Carolina</u>, 547 U.S. 319, 324 (2006) (quotations and citations omitted); <u>see also</u> <u>Montana v. Egelhoff</u>, 518 U.S. 37, 42 (1996) (holding that due process does not guarantee a defendant the right to present all relevant evidence).  Such latitude is limited, however, by a defendant's constitutional rights to due process and to present a defense, rights originating in the Sixth and Fourteenth Amendments.  See <u>Holmes</u>, 547 U.S. at 324.

In deciding whether the exclusion of evidence violates the due process right to a fair trial or the right to present a defense, the court balances the following five factors: (1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of the attempted defense.  <u>Chia v. Cambra</u>, 360 F.3d 997,1004 (9th Cir. 2004) (citing <u>Miller v. Stagner</u>, 757 F.2d 988, 994 (9th Cir. 1985)); <u>Drayden v. White</u>, 232 F.3d 704, 711 (9th Cir. 2000) (same).  The court also must give due weight to the state interests underlying the state evidentiary rules on which the exclusion was based.  See <u>Chia</u>, 360 F.3d at 1006; <u>Miller</u>, 757 F.2d 988, 995 (9th Cir. 1985).

The state appellate court concluded that there was no basis for a finding of abuse of discretion in the trial court's exclusion of Olguin's statement.  (Resp't Ex. 3 at 5-7.)  The appellate court affirmed the trial court's decision as follows:

> The trial court concluded that there were several factors weighing against a finding of spontaneity, including the elapsed time between the killing and the questioning, the question and answer framework of Ms. Olguin's statements, her attitude toward the questioning, and the tone of her voice and comments, which "sound[ed] mellowed out." There is no basis for finding that the trial judge abused his discretion in reaching this conclusion. The questioning occurred three to four hours after the incident, sufficient time for any initial excitement to fade.  There was no element of urgency or spontaneity apparent in Ms. Olguin's responses to the police questions, and there is no other evidence that her "mental state" was the least bit excited during the questioning. On the contrary, the trial court found her tone to be

"mellowed out." Other than the objective fact that Ms. Olguin had witnessed a brutal murder several hours before, there is no reason to believe that she was at all excited by the time the police began to interview her.

(Id. at 5.)

Respondent argues that there is no evidence to corroborate Olguin's statement that she actually witnessed the shooting. (Resp't at 6.) However, Olguin told the officers that she saw two Hispanic men and an African-American man arguing, and that one of the Hispanics shot the African-American. (Resp't Ex. 3 at 3.) This account corresponds to the evidence presented at trial that Jose Vargas and Michael Perez, two Hispanic men, were at the scene of the shooting. (Id. at 2.) Moreover, Olguin identified the shooting victim as "Marcus," which she reasonably could have mistaken for the victim's correct name, "Marlis." (Id. at 3.) That Olguin was able to give some accurate details of the scene tends to prove her assertion that she did in fact witness the shooting.

Nonetheless, under the applicable Miller factors, the exclusion of Olguin's tape-recorded statement did not violate Petitioner's due process rights. See Miller, 757 F.2d at 994. The first factor, the probative value of the excluded evidence, weighs in favor of Petitioner because Olguin's statement tends to prove that he was not the shooter. The fifth factor also weighs in favor of Petitioner because Olguin's statement would have been a major part of his defense. These two factors, however, are outweighed by the remaining three factors. The second factor - reliability - weighs against Petitioner because Olguin's account, based on her condition at the time "as a heroin addict who appear[ed] to be under its influence," cannot be said to be reliable. (Resp't Ex. 3 at 4.) Other facts also weigh against a finding of reliability, such as the distance of the witness from the shooting, the fact the shooting took place at night when it was dark, and testimony from three other witnesses that disputed Olguin's account. The third factor - whether the statement is capable of evaluation by the trier of fact - weighs against Petitioner because, although Olguin's interview was tape-recorded, the jury cannot evaluate a recording or transcript as effectively as it could

have evaluated in-person testimony, and the state would have no opportunity to challenge the testimony on cross-examination. The fourth factor - whether the statement is the sole evidence on the issue or merely cumulative - also weighs against Petitioner because Olguin was only one of four witnesses to the shooting. Therefore, according to the state court's determination the high degree of deference to which it is entitled under the AEDPA, exclusion of Olguin's statement was not a violation of due process. See Chia, 360 F.3d at 1004.

Petitioner's separate claim that the exclusion of Olguin's statement also violated his right to present a defense similarly is without merit. The Supreme Court has held that the erroneous exclusion of critical, corroborative defense evidence may violate the Sixth Amendment right to present a defense. DePetris v. Kuykendall, 239 F.3d 1057, 1062 (9th Cir. 2001) (citing Chambers, 410 U.S. at 294, and Washington v. Texas, 388 U.S. 14, 18-19 (1967)). However, Petitioner has failed to provide any evidence corroborating Olguin's statement that the shooter was a Hispanic man. Under these circumstances, it cannot be said that the exclusion of Olguin's statement amounted to a Sixth Amendment violation.

Moreover, the alleged errors were of the type "which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." Chapman v. California, 386 U.S. 18, 22 (1967). A habeas petitioner is not entitled to relief unless the trial error "'had substantial and injurious effect or influence in determining the jury's verdict.'" Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). In other words, state prisoners seeking federal habeas relief may obtain plenary review of constitutional claims of trial error, but are not entitled to habeas relief unless the error resulted in "actual prejudice." Id. If the court is convinced that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand. O'Neal v. McAninch, 513 U.S. 432, 437 (1995).

In the instant case, there was more than enough credible evidence against

1    Petitioner to overcome the probative effect of the excluded statement.  Three other

2    witnesses were in closer proximity than Olguin to the victim when he was shot, and all

3    three identified Petitioner as the shooter.  Further, as noted above, Olguin's reliability

4    as a witness was questionable.  This Court concludes that for purposes of federal

5    habeas review, Olguin's statement did not have a substantial and injurious effect on

6    the verdict.  See Brecht, 507 U.S. at 637.  The state court's decision to rejecting this

7    claim thus was neither contrary to nor an unreasonable application of clearly

8    established federal law, nor was it an unreasonable determination of the facts in light

9    of the evidence presented.  See 28 U.S.C. § 2254(d).

10                   2.        Admission of Prior Crimes Evidence and Expert Testimony

11               Petitioner claims that the admission of evidence of his prior drug-related crimes

12    and related expert testimony violated his rights to due process and equal protection.

13    (Pet. at 6, 6f-m.)  The trial court allowed the prosecution to present testimony of two

14    police officers who stated that on at least two occasions they had observed Petitioner

15    engage in drug sales near the scene of the shooting. (Resp't Ex. 3 at 9.)  Evidence of

16    Petitioner's prior drug dealings in the area where the shooting occurred was offered to

17    prove motive and identity of the person who committed the crime.  (Id. at 12-13.)  The

18    trial court also allowed the prosecution to present expert testimony from a police

19    officer who testified that: (1) drug dealing was common in the area where the murder

20    occurred; (2) location is an important factor in successful drug dealing; and (3)

21    violence can result over territorial disputes between drug dealers.  (Id. at 9.)

22               The due process inquiry in federal habeas review is whether the admission of

23    evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair.

24    See Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir. 1995).  Admission of evidence

25    violates due process only if "there are no permissible inferences the jury may draw

26    from the evidence."  See Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991).

27               The state appellate court found that the trial court did not err in admitting the

28    evidence of Petitioner's prior drug dealing in the area. (Resp't Ex. 3 at 12.)  The

appellate court also found no error in the admission of the expert testimony.  (<u>Id.</u> at
13.)  However, the appellate court did conclude that although Petitioner's previous
drug-related charges were admissible, they were admissible only for the purpose of
proving motive.  (<u>Id.</u> at 12.)  The court ruled that it was error for the trial judge to
instruct the jury that it could consider the uncharged crimes for the purpose of proving
identity because the sale of drugs did not bear enough resemblance to the murder.  (<u>Id.</u>
at 13.)  Moreover, the appellate court found that the trial court erred in admitting
Petitioner's probation violation for marijuana consumption.  (<u>Id.</u> at 12.)  Nonetheless,
the court concluded that both errors were harmless, and there was no possibility that
the jury would have reached a different verdict in the absence of these errors.  (<u>Id.</u> at
13-15.)

This Court agrees that admission of evidence that Petitioner previously had
engaged in drug-dealing activity near the scene of the shooting did not render the trial
fundamentally unfair.  The trial court properly admitted the prior crimes for the
purpose of showing motive.  The trial court concluded that, in light of the expert
testimony, the jury could draw the rational inference that Petitioner had motive to
shoot the victim because of a dispute over territorial rights for drug dealing in that
area.  Moreover, the trial court correctly instructed the jury that Petitioner's prior
crimes were not to be considered as evidence of guilt or predisposition.  (Resp't Ex.
1H at 1821.)  Because the jury was entitled to draw permissible inferences from the
admission of prior crimes and expert testimony, there was no violation of due process.
<u>See</u> <u>Jammal</u>, 926 F.2d at 920.

With respect to admission of the expert testimony, although a "witness is not
permitted to give a direct opinion about the defendant's guilt or innocence . . . an
expert may otherwise testify regarding even an ultimate issue to be resolved by the
trier of fact."  <u>Moses v. Payne</u>, 555 F.3d 742, 761 (9th Cir. 2009) (citing <u>United States
v. Lockett</u>, 919 F.2d 585, 590 (9th Cir. 1990)).  Here, the prosecution's expert witness
testified concerning the prevalent nature of drug dealing in the area, the importance of

1  location for successful drug dealing, and the fact that disputes between drug dealers

2  over customers or territory can end in violence.  (Resp't Ex. 3 at 9.)  The expert

3  expressed no opinion on Petitioner's guilt or innocence.  (See Resp't Ex. 2G at 1379-

4  1389.)  Accordingly, admission of the expert testimony did not violate Petitioner's

5  right to due process.

6       Petitioner's claim that the admission of prior crimes evidence and expert

7  testimony violated his right to equal protection also is without merit.  The Equal

8  Protection Clause of the Fourteenth Amendment does not assure uniformity of judicial

9  decisions or immunity from judicial error; otherwise, every alleged misapplication of

10  state law would constitute a federal constitutional question.  See Alford v. Rolfs, 867

11  F.2d 1216, 1219 (9th Cir. 1989) (citing Beck v. Washington, 369 U.S. 541, 554-55

12  (1962)).  Unless the United States Supreme Court requires otherwise, a state law that

13  mandates the same treatment for any person who commits a particular crime does not

14  violate equal protection.  See Alvarado v. Hill, 252 F.3d 1066, 1069-70 (9th Cir.

15  2001).  Petitioner has failed to establish how application of the provisions of

16  California's Evidence Code caused him to suffer unequal treatment.  This Court finds

17  no violation of Petitioner's equal protection rights.

18       As discussed above, see supra p. 8, a habeas petitioner is not entitled to relief

19  unless the trial error "'had substantial and injurious effect or influence in determining

20  the jury's verdict.'"  Brecht, 507 U.S. at 637.  Even without the admission of prior

21  crimes and expert testimony, the evidence against Petitioner was substantial.  In

22  particular, two witnesses gave nearly identical accounts of the shooting and identified

23  Petitioner as the shooter, and those accounts were corroborated by a third witness.

24  (Resp't Ex. 3 at 14-15.)  Moreover, although he testified in his own defense, Petitioner

25  was unable to explain his whereabouts on the night of the killing and provided no

26  exculpatory evidence beyond a flat denial.  (Id. at 15.)  Thus, even if admission of the

27  evidence was erroneous, it cannot be said that the evidence had a substantial and

28  injurious effect on the jury's verdict.  See Brecht, 507 U.S. at 637.

1    The state court's decision rejecting this claim was neither contrary to nor an

2  unreasonable application of clearly established federal law, nor was it an unreasonable

3  determination of the facts in light of the evidence presented.  See 28 U.S.C. § 2254(d).

4         3.    Insufficiency of Evidence

5    Petitioner claims that his conviction violated due process because it was based

6  on insufficient evidence.  (Pet. at 6n.)  Respondent contends that this claim is

7  procedurally barred because Petitioner failed to raise it during trial or on direct appeal.

8  (Resp't at 10-12.)

9    A federal court will not review questions of federal law decided by a state court

10  if the decision also rests on a state law ground that is independent of the federal

11  question and adequate to support the judgment.  Coleman v. Thompson, 501 U.S. 722,

12  729-30 (1991).  Petitioner first raised his claim of insufficiency of evidence in his

13  habeas petition to the state supreme court.  (Resp't Ex. 6 at 3.)  The state supreme

14  court denied the petition, citing In re Seaton, 34 Cal.4th 193 (2004) (barring a habeas

15  claim that was not raised at trial) and In re Dixon, 41 Cal.2d 756 (1953) (providing

16  that to bring a claim in a state habeas action a petitioner must first have pursued the

17  claims on direct appeal from his or her conviction).  (Resp't Ex. 7 at 1.)  Respondent

18  concedes that In re Seaton is inapplicable to the instant claim because under California

19  law a defendant does not waive his right to challenge the sufficiency of the evidence

20  by failing to raise the issue at trial.  (Resp't at 10.)  However, Respondent argues that

21  the Dixon rule applies.  (Id.)

22    The California Supreme Court has set specific standards and exceptions for the

23  application of the Dixon rule.  In re Harris, 5 Cal. 4th 813 (1993).  The exceptions

24  summarized in Harris are as follows: (1) fundamental constitutional error; (2) lack of

25  jurisdiction over the petitioner; (3) the trial court's acting in excess of its jurisdiction;

26  or (4) an intervening change in the law.  See Park v. California, 202 F.3d 1146, 1152

27  (9th Cir. 2000).  Harris's "fundamental constitutional error" exception permits a

28  hearing on the merits of a state habeas petition "when the habeas corpus petitioner

claims a violation of his or her fundamental constitutional rights." In re Harris, 5 Cal. 4th at 829.

In In re Robbins, 18 Cal. 4th 770 (1998), the California Supreme Court stated that prior to 1998 it necessarily addressed fundamental constitutional claims when applying the Dixon rule.  See Park, 202 F.3d at 1152-53 (citing Robbins, 18 Cal. 4th at 814 n.34).  Because "fundamental constitutional" rights include federal-law issues under Robbins, the Dixon rule as applied before Robbins was not independent of federal law where the claim alleged federal constitutional error.  See id. at 1152. Accordingly, a California court's invocation of the Dixon rule cannot be the basis for a procedural default in federal court, at least when the default occurred before Robbins was decided.  See id. at 1153.

In Robbins, the California Supreme Court adopted "a stance from which it will now decline to consider federal law when deciding whether claims are procedurally defaulted."  Park, 202 F.3d at 1152 (citing In re Robbins, 18 Cal. 4th at 811-12).  The Ninth Circuit has reserved the question of whether this portion of Robbins was sufficient to establish the Dixon rule as an independent and adequate procedural bar for cases in which the state petition was denied after the Robbins decision.  See id. at 1152-53.  Thus, because the Ninth Circuit's position as to whether the Dixon rule is an adequate procedural bar is unclear, this Court will assume without deciding that Petitioner's claim of insufficiency of evidence is not procedurally defaulted.  The claim nonetheless will be denied on the merits.

When a state court does not reach the merits of a habeas claim, there is no state court decision on the issue to which to accord deference.  See Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  Thus, "concerns about comity and federalism that arise when a state court reaches the merits of a petition for post-conviction relief do not exist."  Id.  Accordingly, when a state court has not reached the merits of a properly raised issue, the federal habeas court must review it de novo.  Id.  Because the California Supreme Court did not issue a decision on the merits of this claim, this

1    Court reviews it de novo.  In reviewing a habeas petition for a prisoner who alleges

2    insufficiency of evidence to support his conviction, the federal court must determine

3    whether, "after viewing the evidence in the light most favorable to the prosecution,

4    any rational trier of fact could have found the essential elements of the crime beyond a

5    reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

6         Petitioner argues that his conviction is not supported by the evidence.  (Pet. at

7    6, 6n.)  However, Petitioner's argument in support of his claim focuses on the

8    probative value of the evidence, not its legal sufficiency.  For example, Petitioner

9    argues that the photographic lineup shown to witnesses Vargas and Perez was

10   "impermissibly and unduly suggestive."  (Pet. at 6n.)  Whether the admission of the

11   photographic lineup identification violated due process is irrelevant in the context of

12   an insufficiency of evidence claim.

13        Petitioner also argues that the testimony of the three eyewitnesses was

14   unreliable.  (Resp't Ex. 3 at 6n.)  However, if confronted by a record that supports

15   conflicting inferences, a federal habeas court "must presume – even if it does not

16   affirmatively appear on the record – that the trier of fact resolved any such conflicts in

17   favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326.

18   A jury's credibility determinations are therefore entitled to near-total deference.

19   Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004).  Except in the most exceptional

20   of circumstances, Jackson does not permit a federal habeas court to revisit a jury's

21   credibility determinations.  See id.  Since Petitioner had an opportunity to argue

22   credibility before the jury, this Court must accept the jury's determination.

23        Finally, Petitioner argues that Olguin's statements to the police were

24   unlawfully excluded.  (Pet. at 6n.)  However, as discussed above, the state appellate

25   court properly determined that the exclusion of Olguin's statement by the trial court

26   was not an abuse of discretion, and this Court finds no error in that determination.  See

27   supra pp. 5-9.  Moreover, Olguin's statement is irrelevant to this claim because it was

28   excluded at trial and thus not considered by the jury.

1   Viewing the evidence in the light most favorable to the prosecution, including

2   the eyewitness testimony, established motive, and Petitioner's history of drug dealing

3   in the area, a rational trier of fact reasonably could have found that Petitioner

4   committed first degree murder under California law.  <u>Jackson</u>, 443 U.S. at 319.

5   Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

6           4.      <u>Admission of Identification Evidence from Photographic Lineup</u>

7           Petitioner claims that the admission of identification evidence violated his right

8   to due process because the photo lineup procedures were "impermissibly suggestive."

9   (Pet. at 60.)  During trial, witnesses Perez and Vargas testified that they had identified

10  Petitioner as the shooter from a photographic lineup.  (Resp't at 14.)  Respondent

11  argues that Petitioner's claim is procedurally barred because Petitioner failed to raise

12  the claim during trial or on direct appeal.  (Resp't at 13-14.)

13          As with his claim of insufficiency of evidence, Petitioner first raised his claim

14  regarding admission of the lineup testimony in his habeas petition to the state supreme

15  court.  (Resp't Ex. 6 at 4.)  The state supreme court denied the petition, citing <u>In re</u>

16  <u>Seaton</u>, 34 Cal.4th 193 (2004) (barring a habeas claim that was not raised at trial) and

17  <u>In re Dixon</u>, 41 Cal.2d 756 (1953) (providing that to bring a claim in a state habeas

18  action a petitioner must first have pursued the claims on direct appeal from his or her

19  conviction).

20          In citing <u>In re Seaton</u>, the state supreme court's disposition apparently "rests on

21  [Petitioner's] procedural error in failing to raise the constitutional issue below."  <u>Davis</u>

22  <u>v. Woodford</u>, 384 F.3d 628, 654 (9th Cir. 2004).  However, a "procedural default does

23  not bar consideration of a federal claim on either direct or habeas review unless the

24  last state court rendering a judgment in the case 'clearly and expressly' states that its

25  judgment rests on a state procedural bar."  <u>Harris v. Reed</u>, 489 U.S. 255, 263 (1989).

26  Given the terse nature of the state supreme court's denial of the habeas petition,

27  (Resp't Ex. 7 at 1), it is not entirely clear that the judgment was based on a state

28  procedural bar.  Moreover, as discussed above, <u>see</u> *supra* pp. 12-13, the status of <u>In re</u>

1   Dixon is unclear in the Ninth Circuit.  Under these circumstances, this Court will

2   assume without deciding that the claim is not procedurally defaulted, and will review

3   the claim de novo.  See Pirtle, 313 F.3d at 1167.

4           To prevail on habeas review, a petitioner must show that the identification

5   procedures used in the case were "'so unnecessarily suggestive and conducive to

6   irreparable mistaken identification that he was denied due process of law.'"  Johnson

7   v. Sublett, 63 F.3d 926, 929 (9th Cir. 1995).  An identification procedure is

8   impermissibly suggestive when it emphasizes the focus upon a single individual

9   thereby increasing the likelihood of misidentification.  See United States v. Bagley,

10  772 F.2d 482, 493 (9th Cir. 1985).  "The repeated showing of the picture of an

11  individual, for example, reinforces the image of the photograph in the mind of the

12  viewer."  Id. (citing Simmons v. United States, 390 U.S. 377, 383 (1968)).

13          The photo lineup in this case did not focus on a single individual, and

14  Petitioner makes no specific allegations otherwise.  To the contrary, Vargas was

15  shown sixty-six photos before he identified Petitioner as the shooter.  (Resp't Ex. 2J at

16  2086.)  Although Vargas signed the back of the photo after identifying Petitioner, the

17  next witness, Perez, could not see Vargas's signature during the subsequent photo

18  lineup in which he also identified Petitioner as the shooter.  (Resp't Ex. 2E at 950-51.)

19  Petitioner thus has failed to establish that the photo lineup was impermissibly

20  suggestive.

21          Even if the photo array was suggestive, the "unnecessary suggestiveness" of a

22  photo lineup does not always require the exclusion of evidence.  Neil v. Biggers, 409

23  U.S. 188, 198-99 (1972).  "It is the likelihood of misidentification which violates a

24  defendant's right to due process."  Id. at 198.   The central question is "whether under

25  the 'totality of the circumstances' the identification was reliable even though the

26  confrontation procedure was suggestive."  Id. at 199.  In the present case, the risk of

27  possible misidentification was low because both witnesses were in close proximity to

28  the shooting.  Moreover, the two witnesses were acquainted with Petitioner from

1  previous drug-related encounters and could recognize him more readily than if he had
2  been a stranger.  Thus, misidentification was not substantially likely and the photo
3  lineup did not violate Petitioner's right to due process.

4       Habeas relief is warranted only if the constitutional error had a "substantial and
5  injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at
6  637.  Even if the trial court erred in admitting evidence regarding the photographic
7  lineup, the error was harmless because both witnesses also identified Petitioner at trial.
8  Accordingly, the admission of the challenged identification evidence does not warrant
9  federal habeas relief.

11                           **CONCLUSION**

12       For the reasons set forth above, the Court concludes that Petitioner has failed to
13  show any violation of his federal constitutional rights in the underlying state criminal
14  proceedings.  Accordingly, the petition for writ of habeas corpus is DENIED.  The
15  Clerk shall terminate all pending motions, enter judgment and close the file.
16       IT IS SO ORDERED.

18  DATED: ___6/24/09_____          _____
19                                        JEREMY FOGEL
                                          United States District Judge

# UNITED STATES DISTRICT COURT

## FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

TRACY JAMAR BROWN,

               Petitioner,

  v.

SCOTT KERNAN, Warden,

               Respondent.

_____/

Case Number: CV06-04194 JF

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on ____7/9/09_____, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Tracy Jamar Brown T-86155
California State Prison - Corcoran
P.O. Box 3461
Corcoran, CA 93212

Dated: ____7/9/09_____

                        Richard W. Wieking, Clerk